**131 Nev., Advance Opinion 70**
IN THE SUPREME COURT OF THE STATE OF NEVADA

IN RE: MANHATTAN WEST
MECHANIC'S LIEN LITIGATION.

No. 61131



FILED

SEP 2 4 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

APCO CONSTRUCTION, A NEVADA
CORPORATION; ACCURACY GLASS &
MIRROR COMPANY, INC.; BRUIN
PAINTING CORPORATION;
BUCHELE, INC.; CACTUS ROSE
CONSTRUCTION; FAST GLASS, INC.;
HD SUPPLY WATERWORKS, LP;
HEINAMAN CONTRACT GLAZING;
HELIX ELECTRIC OF NEVADA, LLC;
INTERSTATE PLUMBING & AIR
CONDITIONING; SWPPP
COMPLIANCE SOLUTIONS, LLC; AND
WRG DESIGN, INC.,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
SUSAN SCANN, DISTRICT JUDGE,
Respondents,
    and
SCOTT FINANCIAL CORPORATION, A
NORTH DAKOTA CORPORATION;
AHERN RENTALS, INC.; ARCH
ALUMINUM AND GLASS CO.; ATLAS
CONSTRUCTION SUPPLY, INC.;
BRADLEY J. SCOTT; CABINETEC,
INC.; CAMCO PACIFIC
CONSTRUCTION CO., INC.;
CELLCRETE FIREPROOFING OF
NEVADA, INC.; CLUB VISTA
FINANCIAL SERVICES, LLC;
CONCRETE VISIONS, INC.; CREATIVE
HOME THEATRE, LLC; CUSTOM

15-28849

SELECT BILLING, INC.; DAVE
PETERSON FRAMING, INC.; E&E
FIRE PROTECTION, LLC; EZA, P.C.;
FERGUSON FIRE AND FABRICATION,
INC.; GEMSTONE DEVELOPMENT
WEST, INC.; GRANITE
CONSTRUCTION COMPANY; HARSCO
CORPORATION; HYDROPRESSURE
CLEANING; INQUIPCO; INSULPRO
PROJECTS, INC.; JEFF HEIT
PLUMBING CO., LLC; JOHN DEERE
LANDSCAPE, INC.; LAS VEGAS
PIPELINE, LLC; NEVADA PREFAB
ENGINEERS; NOORDA SHEET
METAL COMPANY; NORTHSTAR
CONCRETE, INC.; PAPÉ MATERIAL
HANDLING; PATENT
CONSTRUCTION SYSTEMS;
PRESSURE GROUT COMPANY;
PROFESSIONAL DOOR AND MILL
WORKS, LLC; READY MIX, INC.;
RENAISSANCE POOLS & SPAS, INC.;
REPUBLIC CRANE SERVICE, LLC;
STEEL ENGINEERS, INC.; SUNSTATE
COMPANIES, INC.; SUPPLY
NETWORK, INC.; THARALDSON
MOTELS II, INC.; TRI CITY DRYWALL,
INC.; UINTAH INVESTMENTS, LLC;
AND ZITTING BROTHERS
CONSTRUCTION, INC.,
Real Parties in Interest.

Original petition for writ of mandamus and prohibition challenging a district court order granting summary judgment in a mechanic's lien action.

*Petition denied.*

Howard & Howard Attorneys PLLC and Wade B. Gochnour and Gwen Rutar Mullins, Las Vegas,
for Petitioner APCO Construction.

Sterling Law, LLC, and Beau Sterling, Las Vegas; Peel Brimley LLP and Richard L. Peel and Michael T. Gebhart, Henderson,
for Petitioners Accuracy Glass & Mirror Company, Inc.; Bruin Painting Corporation; Buchele, Inc.; Cactus Rose Construction; Fast Glass, Inc.; HD Supply Waterworks, LP; Heinaman Contract Glazing; Helix Electric of Nevada, LLC; Interstate Plumbing & Air Conditioning; SWPPP Compliance Solutions, LLC; and WRG Design, Inc.

Lionel Sawyer & Collins and A. William Maupin, Las Vegas; Meier & Fine, LLC, and Glenn F. Meier and Rachel E. Donn, Las Vegas; Hutchinson & Steffen, LLC, and Michael K. Wall, Las Vegas,
for Real Party in Interest Scott Financial Corporation.

Kemp, Jones & Coulthard, LLP, and J. Randall Jones, Las Vegas,
for Real Parties in Interest Bradley J. Scott and Scott Financial Corporation.

Snell & Wilmer, LLP, and Robin E. Perkins, Las Vegas,
for Real Party in Interest Ahern Rentals, Inc.

Holley, Driggs, Walch, Puzey & Thompson and Jeffrey R. Albregts, Las Vegas,
for Real Party in Interest Arch Aluminum and Glass Co.

Tony Ditty, Escondido, California,
for Real Party in Interest Atlas Construction Supply, Inc.

Premier Legal Group and R. Christopher Reade, Las Vegas,
for Real Party in Interest Cellcrete Fireproofing of Nevada, Inc.

Grant Morris Dodds PLLC and Steven L. Morris, Henderson,
for Real Party in Interest Camco Pacific Construction Co., Inc.

Greenberg Traurig, LLP, and Mark E. Ferrario, Tami Cowden, and Moorea Katz, Las Vegas,
for Real Parties in Interest Club Vista Financial Services, LLC; and Tharaldson Motels II, Inc.

SUPREME COURT
OF
NEVADA

(O) 1947A

3

Koch & Scow, LLC, and David R. Koch, Henderson,
for Real Parties in Interest Creative Home Theatre, LLC; and Renaissance Pools & Spas, Inc.

T. James Truman & Associates and T. James Truman, Las Vegas,
for Real Parties in Interest Dave Peterson Framing, Inc.; E&E Fire Protection, LLC; Noorda Sheet Metal Company; Pressure Grout Company; and Professional Door and Mill Works, LLC.

Williams & Associates and Donald H. Williams, Las Vegas,
for Real Parties in Interest Eza, P.C.; Harsco Corporation; and Patent Construction Systems.

Fennemore Craig Jones Vargas and David W. Dachelet, Las Vegas,
for Real Party in Interest Ferguson Fire and Fabrication, Inc.

Watt, Tieder, Hoffar & Fitzgerald, LLP, and David R. Johnson, Las Vegas,
for Real Party in Interest Granite Construction Company.

Dickinson Wright PLLC and Eric Dobberstein, Las Vegas,
for Real Party in Interest Insulpro Projects, Inc.

Keith E. Gregory & Associates and Keith E. Gregory, Las Vegas,
for Real Party in Interest Jeff Heit Plumbing Co., LLC.

Varricchio Law Firm and Philip T. Varricchio, Las Vegas,
for Real Parties in Interest John Deere Landscape, Inc.; and Supply Network, Inc.

Smith & Shapiro, LLC, and James E. Shapiro, Henderson,
for Real Party in Interest Las Vegas Pipeline, LLC.

Jolley Urga Wirth Woodbury & Little and Martin A. Little, Las Vegas,
for Real Parties in Interest Nevada Prefab Engineers; Papé Material Handling; and Steel Engineers, Inc.

Pezzillo Lloyd and Jennifer R. Lloyd, Las Vegas,
for Real Parties in Interest Northstar Concrete, Inc.; and Tri City Drywall, Inc.

Brian K. Berman, Las Vegas,
for Real Party in Interest Ready Mix, Inc.

Law Office of Hayes & Welsh and Garry L. Hayes, Henderson,
for Real Party in Interest Sunstate Companies, Inc.

Procopio, Cory, Hargreaves & Savitch, LLP, and Andrew J. Kessler, San Diego, California,
for Real Party in Interest Uintah Investments, LLC.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, and Reuben H. Cawley, Las Vegas,
for Real Party in Interest Zitting Brothers Construction, Inc.

Cabinetec, Inc.; Concrete Visions, Inc.; Custom Select Billing, Inc.; Gemstone Development West, Inc.; Hydropressure Cleaning; Inquipco; Republic Crane Service, LLC,
In Pro Se.

---

BEFORE HARDESTY, C.J., DOUGLAS and CHERRY, JJ.

*OPINION*

By the Court, HARDESTY, C.J.:

In this writ proceeding, we must determine whether a subordination agreement that subordinates a lien for original land financing to a new construction deed of trust affects the priority of a mechanic's lien for work performed after the date of the original loan but before the date of the construction deed of trust. Because contractual partial subordination differs from complete subordination, we agree that a contractual partial subordination by creditors of a common debtor do not subordinate a first priority lien to a mechanic's lien. Further, nothing in NRS 108.225 changes the priority of a mechanic's lien to a partially

subordinated lien recorded before the mechanic's lien became effective. Thus, the priority of the mechanic's lien remains junior to the amount secured by the original senior lien.

## *PROCEDURAL AND FACTUAL HISTORY*

Gemstone Apache, LLC (Apache), intended to develop a mixed-use property (Manhattan West) in Las Vegas. Real party in interest Scott Financial Corporation (SFC) made multiple loans to Apache for this purpose. The first three loans, which were recorded in July 2006, totaled $38 million (the Mezzanine Deeds of Trust) and financed the purchase of the property. In April 2007, petitioner APCO Construction (APCO),[1] the contractor hired by Apache, began construction on Manhattan West, setting the priority date for mechanic's lien services. In May and October of 2007, the Mezzanine Deeds of Trust were amended to secure additional funds for the project.[2]

In early 2008, Gemstone Development West, LLC (GDW), purchased Manhattan West from Apache, assuming Apache's loan obligations. To obtain financing for construction, GDW borrowed an additional $110,000,000 from SFC (the Construction Deed of Trust), recording the deed of trust on February 7, 2008. As part of the overall

---

[1]There are multiple petitioners appearing in this matter, and petitioners have filed a joint petition with this court. We collectively refer to petitioners as APCO.

[2]Although APCO frames these amendments as a refinance, the parties present no argument regarding whether these amendments served to refinance the Mezzanine Deeds of Trust or what effect a refinance would have on lien priority, and thus, we do not consider this issue. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

transaction, SFC and GDW entered into a subordination agreement subordinating the Mezzanine Deeds of Trust to the Construction Deed of Trust. SFC indicated that its intent for the subordination agreement was for SFC to determine "in what order SFC's debts would be satisfied." The subordination agreement did not state whether the subordination was complete or partial, nor did it address the priority of any potential mechanics' liens.

The relationship between APCO and GDW deteriorated. APCO stopped work on Manhattan West and filed suit against GDW, SFC, and others. SFC and APCO both moved for summary judgment on the issue of lien priority. SFC argued that the subordination agreement partially subordinated the Mezzanine Deeds of Trust to the Construction Deed of Trust, giving the Construction Deed of Trust senior priority for $38 million and leaving APCO's mechanics' liens unaffected. APCO argued that the subordination agreement completely subordinated the Mezzanine Deeds of Trust to the Construction Deed of Trust, prioritizing the Mezzanine Deeds of Trust after APCO's mechanics' liens and the Construction Deed of Trust. It further argued that NRS 108.225 precluded the Construction Deed of Trust from taking priority over APCO's mechanics' liens.

The district court initially granted summary judgment in favor of APCO, but, after SFC filed a motion for reconsideration, the district court granted summary judgment in favor of SFC.[3] The district

---

[3]APCO argues that the district court erred in reconsidering the motion. APCO's argument is without merit because NRCP 54(b) permits the district court to revise a judgment that adjudicates the rights of less than all the parties until it enters judgment adjudicating the rights of all
*continued on next page...*

court determined that the subordination agreement only partially subordinated the Mezzanine Deeds of Trust to the Construction Deed of Trust and left the mechanics' liens in the second-priority position. APCO petitioned for a writ of mandamus[4] to compel the district court to vacate its order and recognize APCO's mechanics' liens as holding a first priority.

## DISCUSSION

"A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (internal citation omitted); *see* NRS 34.160. We exercise our discretion to entertain this writ petition because an important issue of law requires clarification—whether a mechanic's lien takes priority over a contractually subordinated debt by creditors of a common debtor either because (1) the subordination agreement constitutes a complete subordination, or (2) NRS 108.225 (Nevada's mechanic's lien statute) precludes the partial subordination of an existing lien.

---

*...continued*
the parties. *See Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 479, 215 P.3d 709, 716 (2009). Here, the district court's order determining lien priority adjudicated the rights of only a few of the parties.

[4]In the alternative, APCO petitions for a writ of prohibition, arguing that the district court did not have authority to rehear the case. We conclude, however, that a writ of prohibition is improper here because the district court had jurisdiction to hear and determine the motion to reconsider pursuant to NRCP 54(b). *See Goicoechea v. Fourth Judicial Dist. Court*, 96 Nev. 287, 289, 607 P.2d 1140, 1141 (1980) (stating that this court will not issue a writ of prohibition "if the court sought to be restrained had jurisdiction to hear and determine the matter under consideration").

Contractual subordination allows creditors of a common debtor to contractually rearrange the priority of their enduring liens or debt positions. *See* Robin Russell, *Distinction Between Contractual and Equitable Subordination*, 2 Tex. Prac. Guide: Fin. Transactions § 10:10 (Robin Russell & J. Scott Sheehan eds., 2014); *see also* George A. Nation, III, *Circuity of Liens Arising From Subordination Agreements: Comforting Unanimity No More*, 83 B.U. L. Rev. 591, 591-92 (2003) (describing subordination). Central to this case is the distinction between complete and partial contractual subordination, which differ on their rearrangements of the priorities of lienholders.

In a complete subordination, the agreement subordinating the senior lien to a junior lien effectively also subordinates the senior lien to intervening liens.[5] *See* George A. Nation, III, *Circuity of Liens Arising From Subordination Agreements: Comforting Unanimity No More*, 83 B.U. L. Rev. 591, 593 (2003). Here, for example, the Mezzanine Deeds of Trust would simply become junior to the Construction Deed of Trust, which would remain junior to the mechanics' liens, thus moving the mechanics' liens to first priority. In contrast, partial subordination gives a junior lien

---

[5]Complete subordination occurs when the effect of a subordination agreement subordinates the first-priority lien to the third-priority lien but also has the effect of subordinating the first-priority lien to the second-priority lien. For example, there are three liens on a property with the following priority: lien A for $10,000, lien B for $5,000, and lien C for $20,000. Complete subordination would mean that the subordination agreement between the holders of lien A and lien C resulted in the following priority: lien B for $5,000, lien C for $20,000, and then lien A for $10,000. *See* George A. Nation, III, *Circuity of Liens Arising From Subordination Agreements: Comforting Unanimity No More*, 83 B.U. L. Rev. 591, 593 (2003).

Supreme Court
of
Nevada

(O) 1947A

priority over a senior lien to the extent that it does not affect the priority of the intervening lien; thus, the junior lien only has priority over the intervening lien in the amount of the senior lien.[6] *Id.* at 593-94; *Caterpillar Fin. Servs. Corp. v. Peoples Nat'l Bank, N.A.*, 710 F.3d 691, 693-94 (7th Cir. 2013). In other words, in partial subordination, the priority of liens is contractually rearranged without affecting the position of any intervening lien. *Caterpillar*, 710 F.3d at 693-94. Here, the Construction Deed of Trust would partially subordinate the Mezzanine Deeds of Trust, giving the Construction Deed of Trust $38 million in first priority, leaving the mechanics' liens in second priority, and placing the remainder of the Construction Deed of Trust in third priority over the Mezzanine Deeds of Trust.

At issue is whether the subordination agreement effected a complete subordination and whether Nevada caselaw and statutes preclude partial subordination.

*The subordination agreement effected a partial subordination*

APCO argues that the district court erred when, in granting summary judgment in favor of SFC, it determined that the subordination agreement was intended to create a partial subordination, not a complete

---

[6]Partial subordination occurs when the effect of a subordination agreement subordinates a first-priority lien to a third-priority lien without affecting the priority of the second lien. For example, using the factual scenario from footnote 4, partial subordination occurs when the holders of lien A and lien C agree to subordinate lien A to lien C. After the agreement, the lien priority would be lien C for $10,000, lien B for $5,000, the remaining amount of lien C ($10,000), and then lien A for $10,000. *See* George A. Nation, III, *Circuity of Liens Arising From Subordination Agreements: Comforting Unanimity No More*, 83 B.U. L. Rev. 591, 593-94 (2003).

subordination. We review an order granting summary judgment de novo, viewing all evidence "in a light most favorable to the nonmoving party." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). We have held that "[s]ummary judgment is appropriate under NRCP 56 when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that are properly before the court demonstrate that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Id.* at 731, 121 P.3d at 1031. Additionally, "[w]hen the facts in a case are not in dispute, contract interpretation is a question of law, which this court reviews de novo." *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1115, 197 P.3d 1032, 1041 (2008).

Different courts have reached different conclusions about whether a general subordination agreement effects complete or partial subordination. *See Caterpillar*, 710 F.3d at 693-94; *In re Price Waterhouse Ltd.*, 46 P.3d 408, 410 (Ariz. 2002); *see also* George A. Nation, III, *Circuity of Liens Arising From Subordination Agreements: Comforting Unanimity No More*, 83 B.U. L. Rev. 591, 592-93 (2003). The minority view concludes that a general subordination agreement results in complete subordination. *See, e.g., AmSouth Bank, N.A. v. J & D Fin. Corp.*, 679 So. 2d 695, 698 (Ala. 1996). Relying on *Black's Law Dictionary's* definition of "subordination agreement," this view contends that "[b]y definition, 'subordination' contemplates a reduction in priority. Nothing in the definition contemplates *raising* a lower priority lienholder up to the position of the subordinating party." *Id.* Thus, this view holds that lienholders can only step into the shoes of another lienholder when the

Supreme Court
OF
Nevada

(O) 1947A

11

agreement explicitly indicates that there is a transfer of priority rights. *Id.*

In contrast, the United States Court of Appeals for the Seventh Circuit adopted the majority approach and held in favor of partial subordination when the subordination agreement was silent on the issue. *Caterpillar*, 710 F.3d at 693-94. This approach holds that nonparties are unaffected by the subordination agreement and "simply swaps the priorities of the parties to the subordination agreement." *Id.* It reasoned that the party agreeing to subordinate its higher-priority lien surely wants the subsequent loan to occur so that the debtor would be strengthened, but that complete subordination would "drop the subordinating creditor to the bottom of the priority ladder," thus benefiting "a nonparty to the subordination agreement." *Id.* Therefore, as a practical matter, the court "c[ould]n't think why [the subordinating party] would have insisted on complete subordination." *Id.* at 694.

We agree with the reasoning in *Caterpillar*. In the instant case, complete subordination would move APCO's mechanics' liens (nonparties to the subordination agreement) into the first-priority position and leave SFC's liens junior to all mechanics' liens. Partial subordination, however, would leave $38,000,000 of the Construction Deed of Trust in first priority and the mechanics' liens in the same position they were in prior to the subordination agreement. We cannot determine any reason SFC would have intended to completely subordinate the Mezzanine Deeds of Trust, only for APCO's mechanics' liens to then take the first-priority position. Moreover, this aligns with SFC's claimed intent for the subordination agreement—that it should be "allowed to freely contract the order of payment as between" itself. The subordination agreement neither

stated it intended to create complete subordination nor mentioned the mechanic's lien. Absent this clear intent, we conclude that a common-sense approach weighs in favor of partial subordination.

*NRS 108.225 does not preclude partial subordination*

APCO argues that, while parties may contractually subordinate the priorities of their liens, NRS 108.225 does not permit partial subordination, only complete subordination; specifically, APCO asserts that NRS 108.225 prevents SFC from partially subordinating the Mezzanine Deeds of Trust in favor of the Construction Deed of Trust. That statute, which protects the right to payment for those who have worked to improve property, states, in pertinent part, that mechanics' and materialmen's liens are senior to "[a]ny lien, mortgage or other encumbrance which may have attached to the property after the commencement of construction of a work of improvement." NRS 108.225(1)(a); *see In re Fontainebleau Las Vegas Holdings, LLC*, 128 Nev., Adv. Op. 53, 289 P.3d 1199, 1211 (2012); *Hardy Cos., Inc. v. SNMARK, LLC*, 126 Nev. 528, 538, 245 P.3d 1149, 1156 (2010). SFC argues that NRS 108.225 does not preclude other lienholders from contracting for a partial subordination with respect to their lien priorities. This court reviews questions of statutory construction de novo. *I. Cox Constr. Co. v. CH2 Invs., LLC*, 129 Nev., Adv. Op. 14, 296 P.3d 1202, 1203 (2013).

The statute gives priority to mechanics' liens over liens that attach after the commencement of the work of improvement. It does not, however, address subordination agreements between other lienholders.[7]

---

[7]To be sure, contractual partial subordination differs from equitable subrogation, which we addressed in *In re Fontainebleau Las Vegas Holdings, LLC*, 128 Nev., Adv. Op. 53, 289 P.3d 1199, 1209-12 (2012)

*continued on next page...*

This court does not "fill in alleged legislative omissions based on conjecture as to what the [L]egislature would or should have done." *Falcke v. Cnty. of Douglas*, 116 Nev. 583, 589, 3 P.3d 661, 665 (2000) (internal quotations omitted). Therefore, we conclude that NRS 108.225 does not prohibit negotiations between lienholders with priority over mechanics' liens and those with lesser priority in situations where the mechanics' liens will be left in exactly the same position as if the subordination agreement had never occurred. In other words, the statute does not preclude partial subordination.

Here, when APCO began work on Manhattan West, it did so with notice of SFC's Mezzanine Deeds of Trust and knowledge that its mechanics' liens would be in second priority to those liens. Crucially, nothing about the subordination agreement alters the amount of debt that APCO was junior to, and thus, the subordination agreement does not violate NRS 108.225. To read the statute in a way that would grant APCO first priority even though the subordination agreement did not prejudice

---

...*continued*
(concluding that NRS 108.225 precludes the application of equitable doctrines that would advance the priority of a junior lienholder above the priority of a mechanic's lien). We note that *Fontainebleau*'s distinguishing factor is that the mechanic's lien claimants there were *parties* to the subordination agreement and attempted to subordinate their priority positions despite NRS 108.225's constraints. *Id.* at 1208. Unlike *Fontainebleau*, APCO is not a party to the subordination agreement and the subordination agreement has not changed APCO's priority *position.* Here, the contractual partial subordination arises as a result of a subordination agreement, not equity principles. *See, e.g., Bratcher v. Buckner*, 109 Cal. Rptr. 2d 534, 539-40 (Ct. App. 2001) (court relied on subordination agreement, not equitable principles, "to enforce the objective intent of the parties").

APCO's lien position—or change APCO's status whatsoever—would be an over-reading of the statute.

## CONCLUSION

The district court did not improperly determine that the subordination contract effected a partial subordination. Further, NRS 108.225 does not preclude parties from contracting for a partial subordination.

Accordingly, we deny APCO's petition for a writ of mandamus and prohibition.

_____, C.J.
Hardesty

I concur:

_____, J.
Douglas

CHERRY, J., dissenting:

I would not entertain this writ at this stage of the proceedings. A short order stating that intervention is unnecessary at this time would suffice.

I am troubled by the fact that this court previously denied APCO's request for a stay, which would have allowed the district court to conclude this case with a final disposition that could then be appealed to this court.

In reviewing the district court's order granting Scott Financial Corporations' motion for summary judgment filed on May 7, 2012, some three years ago, the order states:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that SFC's loan of $110,000,000.00 is in first position priority regarding the other claimants in the principal amount of $38,000,000.00. Thereafter, the mechanic lien claimants are in second position and the remainder of SFC's $110,000,000.00 principal amount loan, namely $72,000,000.00 in principal is in third position, and the Original Mezzanine Deeds of Trust along with the post-April 2007 Mezzanine Deeds of Trust are in junior priority position to the aforementioned encumbrances.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED a further stay of this litigation is granted pending a petition to the Nevada Supreme Court provided such is timely filed and for which no bond is required.

In cases such as this one, where the right to appeal a final disposition is still viable, the best practice would have been to not only deny APCO's motion for a stay, but also to immediately deny APCO's writ as soon as possible without the necessity of extensive appellate proceedings.

For the above reasons, I would agree the writ should be denied, but I worry that in considering the writ, we are sending the wrong message to the Nevada Bar concerning pretrial extraordinary writs.[1]

_____Cherry_____, J.
Cherry

---

[1]This is not to say that the published opinion by the majority is not an excellent appellate disposition because it is a well-written opinion affirming the district court in all respects.